UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
                :

AMERICAN HOME ENERGY INC., HOMEENERGY    :       21-CV-1337 (ARR) (RR)
INC., ENERGYINVEST LLC, and THOMAS        :
ENZENDORFER,                  :       NOT FOR ELECTRONIC
                :       OR PRINT PUBLICATION
         *Plaintiffs*,         :
                :
   -against-              :       **OPINION & ORDER**
                :
AEC YIELD CAPITAL LLC, AEC 51 YIELD, LLC,    :
SWISS ALP ASSET MANAGEMENT GmbH, and SOLID  :
INCOME LIMITED,              :
                :
         *Defendants*.        :
                :
------------------------------------------------------------------ X

ROSS, United States District Judge:

     In separate cases, now consolidated, plaintiffs and defendants brought suit against each other stemming from a failed arrangement for the sale and financing of solar energy installation contracts. Defendants now move to dismiss plaintiffs' complaint in its entirety and to strike plaintiffs' affirmative defenses to defendants' complaint. Defendants' motion to dismiss is granted in part and denied in part. Defendants' motion to strike is granted in part and denied in part.

## BACKGROUND

### *Factual Background*[1]

     Plaintiff Thomas Enzendorfer is the sole member of plaintiff EnergyInvest LLC ("EnergyInvest"), which in turn is the sole shareholder of plaintiffs HomeEnergy and American Home Energy Inc. ("AHE" or "the Buyer"). Compl. ¶ 3, *HomeEnergy Inc. v. AEC Yield Cap. LLC*, No. 21-CV-1337 (ARR), ECF No. 1 ("Compl."). All plaintiffs have their primary place of business

---

[1] At the motion to dismiss stage, I accept as true the facts pleaded by plaintiffs and draw all reasonable inferences in plaintiffs' favor. *See Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013).

in Sonoma, California. *Id.* ¶¶ 20–23. HomeEnergy and the Buyer install and service solar energy systems for businesses. *Id.* ¶ 2. A "mutual colleague in the energy services industry" introduced Mr. Enzendorfer to Richard Rudy. *Id.* ¶ 31. Mr. Rudy was and is the co-owner of defendant AEC Yield Capital LLC ("AEC" or "the Seller"), a Brooklyn-based representative and management agent of defendant Swiss ALP, an asset management company incorporated under the laws of Liechtenstein and based in Switzerland. *Id.* ¶¶ 6, 24, 26–27, 68. Swiss ALP provides all the capital used in the Seller's lending business, and members of Swiss ALP represented to Mr. Enzendorfer that "[the Seller] is us." *Id.* ¶¶ 68–69. Swiss ALP also owns and controls another Brooklyn-based entity, defendant AEC 51 Yield, LLC ("AEC 51"). *Id.* ¶¶ 25, 61.

In mid-January 2018, Mr. Rudy approached Mr. Enzendorfer with a proposal to purchase 489 solar energy installation contracts from Syntrol Plumbing, Heating and Air, Inc. ("Syntrol"), a company that the Seller had financed, which was going out of business. *Id.* ¶¶ 8–9, 34. The Seller, Mr. Rudy explained, had to foreclose on Syntrol at the end of January and sought a company to fulfill Syntrol's customer contracts and help repay Syntrol's loan and financing obligations to the Seller. *Id.* ¶¶ 9, 35. If the Seller did not locate a company to assume the contracts, Mr. Rudy stated, the Seller risked breaching Syntrol's and the Seller's legal obligations to those customers, and as a result the contracts would be "extinguished" and Swiss ALP would suffer financially. *Id.* ¶¶ 10–11, 35, 72.

Mr. Rudy represented to Mr. Enzendorfer that Syntrol's installation contracts were legitimate and represented viable, ongoing jobs. *Id.* ¶¶ 36, 50. He predicted that if the Buyer purchased the contracts and certain other assets from Syntrol and completed the installations, the Buyer would reap profits of at least $1 million over the course of a few months. *Id.* ¶ 37. Mr. Rudy further represented that as to certain of the Syntrol contracts the work was already completed, limiting the Buyer's role as to these contracts to collecting any money owed. *Id.* ¶ 38.

2

Mr. Rudy told Mr. Enzendorfer that the sale would have to close "imminently." *Id.* ¶ 35. Given the short timeline, plaintiffs did not conduct due diligence on the Seller or Syntrol. *Id.* ¶ 37. Instead, plaintiffs relied on the Seller's representations, financial information provided by the Seller, documents provided jointly by the Seller and Syntrol, and Mr. Enzendorfer's familiarity with the colleague who had introduced him to Mr. Rudy. *Id.*

On January 26, 2018, the Seller foreclosed upon Syntrol. *Id.* ¶ 39. On January 31, the Buyer and the Seller entered into a Purchase and Sale Agreement (the "Agreement"). *Id.* ¶ 40. Under the Agreement, the Buyer purchased Syntrol's customer contracts, software licenses, and related rights and property (the "Syntrol assets") that the Seller then owned. *Id.* ¶ 41. To finance the $3,859,589 purchase price, the Buyer executed a Cash Flow Note, for $2,609,589, and a Term Note, for $1,250,000. *Id.* ¶¶ 41, 43–45. The Buyer pledged the Syntrol assets as collateral to secure these promissory notes pursuant to a Security Agreement, also dated January 31. *Id.* ¶ 46. On the same date, the parties executed an asset-based loan agreement (the "Loan Agreement"), pursuant to which the Buyer would obtain loans from the Seller "for the purpose of completing customer installations, procuring equipment for such installations and for general corporate and business purposes" related to the Syntrol assets. *Id.* ¶¶ 47–48.

The Agreement contains a merger clause and a series of disclaimers, including (in all caps):

- ¶ 7.1: "Buyer acknowledges that it was given adequate inspection rights with respect to the assets prior to entering into this agreement, and is knowledgeable concerning various risks associated with the assets, including, without limitation, the collectability, enforceability, condition or working order of the assets, the income to be derived from the assets, the creditworthiness of any obligor, the form or sufficiency of any of the asset documents, the transferability of the asset documents, and any asset's freedom from liens or encumbrances, in whole or in part."

- ¶ 7.1.2: "Any prior representations or statements of seller or any of its representatives or agents as to the condition or fitness of any of the assets or any of their collectability, enforceability capabilities or capacities, or those of any part, accessory, appliance or item of equipment or inventory, or technical document or

data are merged herein and any such representations or statements not specifically included in this agreement are hereby withdrawn by Seller and Buyer acknowledges that it is not relying on them."

- ¶ 7.2: "Seller and Buyer agree that this Section 7 has been the subject of discussion and negotiation and is fully understood by both Seller and Buyer, and that the Purchase Price and the other terms were arrived at in consideration of the provisions in this Section."

- ¶ 8.1(f): "Buyer represents and warrants that it is a sophisticated investor and has knowledge and experience in the construction business that enable it to evaluate the merits and risks of the transaction contemplated by this Agreement . . . . Buyer has not based its decision to enter into this Agreement [and the financing agreements] upon any oral or written information provided by the Seller or Seller's personnel, agents, [or] representatives . . . . Buyer agrees that it is Buyer's responsibility to review all records available with respect to the Assets, including without limitation, the Asset Documents."

Aff. in Supp. Mot. to Dism. & Mot. to Strike, Ex. A, ECF No. 26.1 ("Agmt.").[2]

The Agreement also contained a release clause:

BUYER'S RELEASE OF CLAIM. Buyer and its successors and assigns do hereby release and forever discharge Seller, its affiliates and their respective agents, attorneys, directors, officers, employees, shareholders, successors and assigns (collectively referred to as the "Released Parties"), of and from any and all claims, demands, obligations, liabilities, breaches of duty, acts, omissions, misfeasance, malfeasance, cause or causes of action, damages, costs, losses, expenses, and remedies of whatsoever kind or nature, irrespective of how, why or by reason of what facts, whether heretofore, now existing or hereafter arising, or which could, might, or may be claimed to exist, whether known or unknown, liquidated or unliquidated, which Buyer now has, or may have in the future against the Released Parties in any manner on account of, arising out of, or related to the Assets purchased hereunder, except with respect to explicit indemnifications provided by Seller herein.

*Id.* ¶ 9.1.

---

[2] In ruling on a motion to dismiss, I may look beyond the complaint and its attachments to documents incorporated by reference and documents "integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted). A document is considered "integral" to the complaint where the complaint "relies heavily upon its terms and effect." *Id.* at 153 (citation omitted). In a breach of contract suit, the contract is integral to the complaint. *See Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006) (noting that "[i]n most instances" where a document is purportedly integral to a complaint, "the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls" (citation omitted)). Moreover, plaintiffs did not challenge defendants' citing the Agreement in their motion to dismiss. *See* Mem. in Opp'n to Mot. to Dism. ("Opp'n"), ECF No. 27. I therefore consider the Agreement in ruling on the motion to dismiss.

The same section also included indemnification clauses for both parties. At issue here is the Seller's Indemnification Clause (the "indemnification clause"), which reads:

> For a period of four years from and after the Delivery Date, Seller shall indemnify, hold harmless, and defend Buyer and its agents, attorneys, directors, officers, employees, shareholders, principles, corporate parent, affiliates, successors and assigns (the "Buyer Indemnified Parties"), from and against any losses, causes of action, liabilities, claims, demands, obligations, damages, costs, and expenses, including reasonable attorneys' fees, to which the Buyer Indemnified Parties shall become liable to any third party on account of (i) any breach of any of Seller's representations, warranties, covenants or agreements in this Agreement, as the same may be limited by this Agreement, and (ii) claims made by junior secured creditors of Syntrol (CPF Asset Management, LLC, Ace Funding Source LLC and Corporate Service Company, as Representative), including but not limited to claims based on their failure to receive notice of the Syntrol Foreclosure.

*Id.* ¶ 9.3.

After closing on the Agreement, plaintiffs discovered that the vast majority of the 489 Syntrol contracts purchased had no value. *Id.* ¶ 50. Prior to the execution of the Agreement, forty-five contracts had been fully installed and paid and fifty-one contracts had been canceled. *Id.* ¶¶ 51, 53. Sixty-six of the contracts were duplicates. *Id.* ¶ 55. More than half of the contracts did not even exist: 232 of the contracts were in fact business leads, not executed agreements, and a further twenty-five contracts were not supported by any sales record. *Id.* ¶¶ 52, 54. Plaintiffs do not know about the status of another fifty-one contracts. *Id.* ¶ 57. Ultimately, plaintiffs possessed only nineteen "legitimate, binding, collectable, ongoing" Syntrol contracts. *Id.* ¶ 56.

Plaintiffs soon experienced cash flow problems. *Id.* ¶ 62. In July 2019, Mr. Enzendorfer and other representatives of plaintiffs met with the Seller. *Id.* ¶ 63. During that meeting, the Seller's representatives stated that some "accounting errors" had occurred regarding the Syntrol assets and the Seller would reimburse plaintiffs between $250,000 and $300,000 to correct these errors. *Id.* ¶ 64. Despite presenting the amount as a refund, the Seller increased plaintiffs' loan balance by the same amount. *Id.* ¶ 65. After that meeting, Mr. Rudy introduced Mr. Enzendorfer to the members of Swiss ALP. *Id.* ¶ 66. Swiss ALP

told Mr. Enzendorfer that it could assist him in resolving the cash flow problems as long as he did not cause a "big stink" over the issues with the contracts, and that working together would allow plaintiffs' business to flourish. *Id.* ¶¶ 74–75, 108. Plaintiffs, on Swiss ALP's advice and direction, continued to take on additional financing from the Seller (and possibly AEC 51).[3] *Id.* ¶ 76; *see also* ¶ 61.

Plaintiffs also faced lawsuits from Syntrol's lenders. On February 9, 2018, Consolidated Electrical Distributors ("Consolidated") sued the Buyer for $629,562.88 worth of materials it had sold to Syntrol and for which Syntrol had not paid. *Id.* ¶ 78. Defendants pressured the Buyer to settle the case, which it did on September 6, 2018. *Id.* In March 2019, Sunnova Energy International Inc. ("Sunnova") sued the Buyer for debts owed by Syntrol. *Id.* ¶ 79. Based on defendants' assurances, pressure, and promises that defendants would make plaintiffs whole, plaintiffs settled with Sunnova in November 2020. *Id.* ¶ 80. To cover the legal fees and settlements, Swiss ALP issued a loan to Mr. Enzendorfer and EnergyInvest through defendant Solid Income, a Cayman Islands corporation owned by Swiss ALP. *Id.* ¶¶ 28, 81. As collateral for this loan, EnergyInvest transferred a stock certificate of 86,666 HomeEnergy shares to Solid Income for the latter to hold in escrow. *Id.* ¶ 81.

Additionally, on August 30, 2018, an interpleader action was brought to resolve inconsistent liabilities among multiple parties claiming entitlements to Syntrol's assets and/or accounts receivable. *Id.* ¶ 86 (citing Compl., *Solar Spectrum LLC v. AEC Yield Cap., LLC*, No. 18-CV-7950

---

[3] Plaintiffs allege in their Complaint that initially the Seller provided the loans agreed upon in the Loan Agreement, but "in or about December 2018," those loans came instead from AEC 51. Compl. ¶ 61, *HomeEnergy Inc. v. AEC Yield Cap. LLC*, No. 21-CV-1337 (ARR), ECF No. 1 ("Compl."). Plaintiffs later plead, however, that after the July 2019 meeting Swiss ALP convinced plaintiffs to continue taking loans from the Seller. *Id.* ¶ 76. Together, these statements could mean that AEC 51 only made loans to the Buyer for the month of December 2018, that the Seller resumed making loans to the Buyer sometime after December 2018, or that there is an error in plaintiffs' pleading. As the ambiguity does not affect my analysis, I do not attempt to resolve it at this stage.

(GBD) (S.D.N.Y. Aug. 30, 2018)). The action named the Seller as a defendant. *Id.* ¶ 87. Despite having foreclosed on Syntrol and sold the Syntrol assets it owned to the Buyer, the Seller represented in this action that it still had an entitlement to Syntrol's assets. *Id.* The Seller did not notify plaintiffs of the action until the court threatened it with sanctions. *Id.* ¶¶ 88–89. In June 2019, the Buyer was substituted for the Seller in the action, ultimately incurring significant legal fees. *Id.* ¶ 90.

### Procedural Background

On March 12, 2021, plaintiffs filed suit against defendants for breach of contract, seeking both rescission of the Agreement, the Security Agreement, and the Loan Agreement and damages; for breach of the covenant of good faith and fair dealing; for fraud; for a declaration that plaintiffs have no financial obligations to defendants; for a declaration that the Seller's UCC1 Financing Statement against the Buyer is void; and for punitive damages. *Id.* at p. 17.

On March 19, 2021, defendants the Seller and AEC 51 filed suit against the Buyer for breach of contract regarding the Agreement, the Term Note, the Cash Flow Note, the Security Agreement, the Loan Agreement, and other financing agreements executed since January 2018 and for breach of the duty of good faith and fair dealing. Compl. pp. 19–29, *AEC Yield Cap. LLC v. Am. Home Energy*, No. 21-CV-1479 (ARR), ECF No. 1. This complaint seeks preliminary and permanent injunctive relief prohibiting the Buyer from transferring any funds or assets to a party other than the Seller and AEC 51, an order granting access to the Buyer's books and records, an order for all payments in a mutual investment to be paid to AEC 51, and damages. *Id.* at 29. On April 12, 2021, the Buyer filed an answer and affirmative defenses in this action. Answer, 21-CV-1479, ECF No. 13 ("Answer").

On May 17, 2021, I consolidated the two actions—with consent of the parties—and designated 21-CV-1337 as the lead case. Op. & Order, 21-CV-1337, ECF No. 22. On June 1, 2021, defendants moved to dismiss plaintiffs' complaint and strike plaintiffs' affirmative defenses to

defendants' complaint. Mot. to Dism., 21-CV-1337, ECF Nos. 24–26 ("MTD").[4]

## MOTION TO DISMISS

### I.   Legal Standard

On a motion to dismiss under Rule 12(b)(6), I accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013). If a document relied on in the complaint contradicts the pleadings, however, the document controls. *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013) (citation omitted). To survive a motion to dismiss, plaintiffs need allege only "enough facts to state a claim to relief that is plausible on its face," raising "a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### II.   Personal Jurisdiction.

Defendants argue that I cannot exercise personal jurisdiction over Swiss ALP and Solid Income because the Complaint fails to allege that these foreign entities committed any acts conveying jurisdiction in New York State. I agree that I do not have personal jurisdiction over Solid Income. I do, however, have jurisdiction over Swiss ALP.

When responding to a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006). "Where a court [has chosen] not

---

[4] While the Seller and AEC 51 are the plaintiffs in the 21-CV-1479 complaint and the Buyer is the defendant, with the cases consolidated I will preserve the party appellations from the lead case, 21-CV-1337, and refer to the Seller and AEC 51 as defendants throughout.

to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) (citation and quotation marks omitted) (alteration in original). "[A]ll pleadings and affidavits are construed in the light most favorable to [the] plaintiff, and where doubts exist, they are resolved in the plaintiff's favor." *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985). The jurisdictional showing must be made for each claim. *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004).

In diversity cases such as this, I must conduct a two-part inquiry to determine whether the exercise of personal jurisdiction is proper: (1) whether there is a basis for personal jurisdiction under the laws of the forum state (here, New York); (2) whether the exercise of personal jurisdiction comports with constitutional due process. *Eades v. Kennedy, PC L. Offs.*, 799 F.3d 161, 168 (2d Cir. 2015).

New York's long-arm statute specifies the circumstances under which personal jurisdiction may be extended to non-domiciliaries. *See* N.Y. C.P.L.R. § 302. A foreign defendant is subject to personal jurisdiction on a claim arising out of certain acts committed by the defendant or its agent. These acts conferring jurisdiction include transacting any business within the state, contracting to supply goods or services in the state, and committing a tortious act within the state. *Id.* § 302(a). To establish that the out-of-state defendant engaged in such acts through an in-state agent, the plaintiff must plead that the alleged in-state agent acted for the benefit of, and with the knowledge and consent of, the out-of-state principal. *Brady v. Basic Rsch., L.L.C.*, 101 F. Supp. 3d 217, 230 (E.D.N.Y. 2015) (applying New York law). Additionally, the principal must exercise "some control" over the agent. *CutCo Indus. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986). This control cannot be shown based merely upon an agent's title or position, or upon conclusory allegations that the out-of-state defendant controls the in-state agent. *See Brady*, 101 F. Supp. 3d at 230. The

9

plaintiff's legal claims must also "arise out of" the relevant acts, meaning that there must be "some articulable nexus between [those acts] and the cause of action sued upon." *Beacon Enters. v. Menzies*, 715 F.2d 757, 764 (2d Cir. 1983) (quoting *McGowan v. Smith*, 419 N.E.2d 321 (N.Y. 1981)).  The court looks to the totality of the circumstances in determining whether jurisdiction exists. *Sunward Elecs.*, 362 F.3d at 23; *CutCo Indus.*, 806 F.2d at 365.

In assessing whether exercising personal jurisdiction comports with "traditional notions of fair play and substantial justice," I must examine, *inter alia*, whether defendants' contacts with New York were continuous and substantial and in no way random, fortuitous, or attenuated. *Sunward Elecs.*, 362 F.3d at 24 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

**A.  I have personal jurisdiction over Swiss ALP.**

Plaintiffs have made out a prima facie case that the Seller was an agent of Swiss ALP. The Complaint pleads that Swiss ALP engaged the Seller as its representative and management agent in the United States, and that Swiss ALP controlled, supervised, and directed the Seller, including participating in several meetings with the Seller and plaintiffs. Compl. ¶¶ 68, 71. The Complaint further pleads that Swiss ALP provided all the capital used in the Seller's lending business (implying it was the source of the funds for the loans to plaintiffs) and provided at minimum a significant part of the Seller's financing overall. *Id.* ¶¶ 7, 27, 68. The Complaint adds that Swiss ALP participated in discussions regarding the alleged misrepresentations and the Buyer's cash flow issues. *Id.* ¶¶ 73–76. Finally, the Complaint pleads that members of Swiss ALP told Mr. Enzendorfer, "[the Seller] is us." *Id.* ¶ 69.[5]

---

[5] In their opposition to the motion to dismiss, plaintiffs attempt to augment their pleadings regarding Swiss ALP's control of the Seller. *See* Mem. in Opp'n to MTD 25 ("Opp'n"), ECF No. 27. Plaintiffs cannot supplement their pleadings in a motion to dismiss briefing, however. *E.g.*, *U.S. ex rel. Siegel v. Roche Diagnostics, Corp.*, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) ("Plaintiff may not amend his complaint through motion papers and the Court will not consider

Swiss ALP's agent, the Seller, is a Brooklyn-based entity and therefore conducted business in New York. Indeed, plaintiffs allege that Mr. Enzendorfer and other representatives met with the Seller at the latter's office. *Id.* ¶ 63. The Seller's contacts with New York were continuous and substantial, not fortuitous or attenuated. Therefore, plaintiffs have sufficiently pleaded minimum contacts for the Seller regarding the contract, tort, and declaratory judgment claims for me to exercise personal jurisdiction over Swiss ALP as to those claims.

**B.  I do not have personal jurisdiction over Solid Income.**

Defendants move to dismiss the claims against Solid Income as barred by an arbitration clause in its December 2020 Loan Agreement with plaintiffs EnergyInvest and Mr. Enzendorfer. MTD 23. Plaintiffs have failed to make a prima facie showing, however, that Solid Income, or an entity acting as its agent, transacted any business in New York or committed a tortious act within the State. Moreover, no facts are pleaded about where the parties contracted for defendants to lend to the Buyer through Solid Income. I therefore do not have jurisdiction over Solid Income, so may not adjudicate any claims against it or the arbitration issue.[6]

**III.  Release Clause.**

Defendants move to dismiss all claims in the Complaint based on the release in the

---

these newly raised allegations." (citation and quotation marks omitted)). Nor can they reframe the pleadings with inauthentic citations to the Complaint.

[6] Even if I had personal jurisdiction, plaintiffs' attempts to circumvent the arbitration clause would fail. Plaintiffs argue in their opposition that the rule that an arbitration clause still governs when a party challenges the agreement as fraudulently induced, *see Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967), does not apply if a party alleges that a contract is void, rather than voidable. Opp'n 31. This argument is an incorrect statement of law after *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), where the Supreme Court rejected lower courts' drawing a distinction between void and voidable contracts. *See id.* at 448; *see also Rubin v. Sona Int'l. Corp.*, 457 F. Supp. 2d 191, 193 (S.D.N.Y. 2006) ("*Buckeye Check Cashing* makes clear that whether [the plaintiff] argues that the agreement is void or voidable, [it] may only avoid arbitration if it can successfully challenge the validity of the arbitration clause itself.").

Agreement. MTD 8–10. Plaintiffs respond that defendants misstate settled law and ignore that the allegations extend beyond the Agreement. Mem. in Opp'n to MTD 12–18 ("Opp'n"), ECF No. 27. Neither of plaintiffs' arguments has merit.

Under New York law, "a valid release constitutes a complete bar to an action on a claim which is the subject of the release." *C3 Media & Mktg. Grp., LLC v. Firstgate Internet, Inc.*, 419 F. Supp. 2d 419, 429 (S.D.N.Y. 2005) (quoting *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)). The validity of the release may be challenged, however, on the traditional basis of fraudulent inducement—in a challenge either to the contract as a whole or to the specific clause. *Id.*; *see also Goldsmith v. Nat'l Container Corp.*, 40 N.E.2d 242, 244 (N.Y. 1942) (holding that a general release does not bar suits seeking damages for fraud in the inducement of the release itself).

Plaintiffs allege the defendants fraudulently induced them to enter into the Agreement. Compl. ¶ 107. Specifically, plaintiffs claim that the Buyer entered into the Agreement because of Mr. Rudy's representations to Mr. Enzendorfer about the validity and future profitability of the Syntrol contracts, representations that were false at the time Mr. Rudy made them. *Id.* ¶¶ 34–38, 58.

Under New York law, however, a specific disclaimer stipulating that the parties are not relying upon certain extra-contractual representations precludes plaintiffs from alleging that the Agreement was executed in reliance upon those representations. *Danann Realty Corp. v. Harris*, 184 N.Y.S.2d 599, 602 (N.Y. 1959). A disclaimer is sufficiently specific where "the substance of the disclaimer provisions tracks the substance of the alleged misrepresentations, notwithstanding semantical discrepancies." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 576 (2d Cir. 2005) (citation omitted). The intent to disclaim reliance on statements about a given topic is underscored when a contracting party acknowledges in the contract that it had "full familiarity with" that topic. *Id.* (citing *Galvatron Indus. Corp. v. Greenberg*, 466 N.Y.S.2d 35 (N.Y. App. Div. 1983)).

Plaintiffs' fraud arguments are precluded by a specific disclaimer. Subsequent to Mr. Rudy's representations to Mr. Enzendorfer, Mr. Enzendorfer signed the Agreement on the Buyer's behalf. In bold, capital letters the Agreement stated that the Buyer was not relying on "any prior representations or statements of [the S]eller or any of its representatives or agents as to the condition or fitness of any of the assets or any of their collectability, enforceability capabilities or capacities" that were not specifically included in the Agreement. Agmt. ¶ 7.1.2. In the same section, the Buyer acknowledged that the Seller had "no knowledge with respect to the collectability . . . of the assets[ or] the income to be derived from the assets." *Id.* ¶ 7.1. The Buyer also confirmed that "it was given adequate inspection rights with respect to the assets prior to entering into this [A]greement, and [was] knowledgeable concerning various risks associated with the assets," including the risks enumerated above. *Id.* Moreover, the parties agreed that the section containing these provisions had "been the subject of discussion and negotiation and [was] fully understood by both [parties], and that the Purchase Price and the other terms were arrived at in consideration of the provisions in this Section." *Id.* ¶ 7.2.

In accordance with New York's specificity requirement for disclaimers, the disclaimer here identifies the specific topics that are the subject of the alleged fraudulent statements and clearly disclaims reliance on the parties' extra-contractual representations. *Cf. Mahn Real Est. Corp. v. Shapolsky*, 577 N.Y.S.2d 824, 826 (N.Y. App. Div. 1991) (finding the disclaimer effective where the plaintiff specifically acknowledged no reliance on any representation regarding subject matter of the claimed fraud). Having negotiated and disclaimed any reliance on extra-contractual representations regarding the conditions of the Syntrol assets and acknowledged the risks accompanying the assets, plaintiffs are precluded from arguing that they relied upon Mr. Rudy's representations and so were fraudulently induced into entering the Agreement.

As plaintiffs' fraudulent inducement argument fails, the release clause is valid and binding. The Buyer is therefore barred from bringing any claims against the Seller and its "affiliates and their respective agents, attorneys, directors, officers, employees, shareholders, successors and assigns" arising out of or related to the Syntrol assets. Agmt. ¶ 9.1. Because the release covers all claims arising out of or related to the assets, it extends beyond claims relating to the Agreement to also bar claims under the other agreements the Buyer entered into with the defendants. Furthermore, since the release clause bars any claims by the Buyer against the Seller's affiliates, it precludes any claims by the Buyer against Swiss ALP and AEC 51. As I have already found that plaintiffs have sufficiently pleaded that the Seller is an agent of Swiss ALP, *see* Discussion II.A, *supra*, Swiss ALP is an affiliate of the Seller and also covered by the release. Plaintiffs plead that AEC 51 is owned and directed by Swiss ALP and that AEC 51 collaborated with the other defendants in providing financing to the Buyer. These pleadings are sufficient to conclude that AEC 51 is also an affiliate of the Seller.

There is one key exception to the release clause, however. The Agreement excepts from the ambit of the release clause "explicit indemnifications provided by [the] Seller." Agmt. ¶ 9.1. The indemnification clause quoted above, *see* Background, *supra*, is precisely such an "explicit indemnification" by the Seller. I therefore find that the Buyer is not barred from bringing its breach of contract claim as to the indemnification clause, as discussed further below. *See* Discussion IV.C, *infra*.

In sum, all the Buyer's claims against defendants are dismissed, with the exception of its breach of contract claim against the Seller regarding the indemnification clause. But defendants are incorrect that the release clause bars all claims asserted in the Complaint: HomeEnergy, EnergyInvest, and Mr. Enzendorfer can still proceed as plaintiffs. The release covers the Buyer "and its successors and assigns"; under the facts as pleaded, these entities are not successors or assigns of the Buyer. Therefore, with the exception of the indemnification clause analysis below,

14

I will adjudicate the motion to dismiss on the remaining claims only as to the remaining plaintiffs, HomeEnergy, EnergyInvest, and Mr. Enzendorfer.

## IV.    The Breach of Contract Claim is Dismissed Except for the Buyer's Claim Regarding the Indemnification Clause.

Count I of the Complaint pleads that the Seller's conduct breached its contractual obligations under the Agreement, the Security Agreement, and the Loan Agreement. Compl. ¶¶ 92–97. Defendants move to dismiss this claim on multiple grounds: (1) only the Buyer, as the sole plaintiff party to the Agreement, has standing to bring this claim; (2) plaintiffs have insufficiently pleaded that the Buyer performed its obligations under the Agreement or that the Seller breached its duties; and (3) the Buyer cannot rely on extra-contractual representations to allege a breach of contract because parol evidence is barred by the merger clause in the Agreement. MTD 11–12.

New York law requires plaintiffs to make out a breach of contract claim by pleading (1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to breach. *Uddo v. DeLuca*, 425 F. Supp. 3d 138, 150 (E.D.N.Y. 2019) (citing *JP Morgan Chase v. J.H. Elec. of N.Y., Inc.*, 893 N.Y.S.2d 237, 239 (N.Y. App. Div. 2010)). The parties do not dispute the existence of a contract, and plaintiffs have adequately pleaded damages, *see* Compl. ¶¶ 78, 80, 84, 90. Therefore, the issues raised by the motion to dismiss are whether, as pleaded in the Complaint, the Buyer performed and whether the Seller did not.

### A.  Standing to Bring Breach of Contract Claim.

Defendants argue that, because the Buyer is the only plaintiff party to the Agreement and the related Security Agreement and Loan Agreement, the Buyer is the only plaintiff that has standing to bring the breach of contract claim. MTD 11. Plaintiffs respond that their breach of contract claim encompasses the additional loan agreements entered into subsequent to January 31, 2018. Opp'n 19. Plaintiffs further argue that Mr. Enzendorfer, as "the sole owner along with his

spouse" of the Buyer,[7] has standing as an intended third-party beneficiary of the Agreement. *Id.* at 20. I find that only the Buyer has standing to bring the breach of contract claim.

Plaintiffs' first response mischaracterizes their breach of contract claim, which states, "[the Seller] breached its obligations under the [] Agreement, [the] Security Agreement, and [the] Loan Agreement" and mentions no other contracts. Compl. ¶ 95; *see also id.* ¶¶ 92–97. Plaintiffs attempt to compensate for this omission by citing those other agreements in their opposition to the motion to dismiss. *See* Opp'n 19 (listing examples of contracts allegedly covered by the breach of contract claim). But plaintiffs cannot supplement their Complaint through their briefing on the motion to dismiss. *See* note 4, *supra*. Based on their pleadings, plaintiffs' breach of contract claim concerns only the Agreement, the Security Agreement, and the Loan Agreement.

In general, a breach of contract action may be brought only by a party to the contract or an intended third-party beneficiary. *See Jennings v. Hunt Cos., Inc.*, 367 F. Supp. 3d 66, 71 (S.D.N.Y. 2019) (citing New York law); *LaSalle Nat'l Bank v. Ernst & Young LLP*, 729 N.Y.S.2d 671, 676 (N.Y. App. Div. 2001). As discussed above, the release in the Agreement bars the Buyer from bringing claims against all defendants. *See* Discussion III, *supra*. Therefore, this claim could survive the motion to dismiss only if Mr. Enzendorfer were a third-party beneficiary to the contract. I find that he is not.

To assert Mr. Enzendorfer's third-party rights, plaintiffs must plead that a valid and binding contract between other parties was intended for his benefit and that such benefit was "sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit [wa]s lost." *Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 251 (2d Cir. 2006) (citation omitted). "[T]he parties' intention to benefit the third party must be gleaned from

---

[7] Though plaintiffs refer to Mr. Enzendorfer's spouse in their opposition to defendants' Motion to Dismiss, the Complaint makes no reference to this person. The role Mr. Enzendorfer's spouse played in the Buyer's operations, if any, does not affect my analysis here.

the face of the contract." *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 249 (2d Cir. 2002) (citation omitted). While the existence and validity of the Agreement is unchallenged, the Complaint contains no allegations that the Agreement on its face was intended for Mr. Enzendorfer's benefit. To the contrary, the Agreement contains a clause disclaiming third-party beneficiaries and reserving the benefits of the Agreement for the Buyer and the Seller. Agmt. ¶ 15.10.[8] In the absence of any indication in either the Agreement or the Complaint that Mr. Enzendorfer was an intended beneficiary, I conclude that he does not have standing to challenge the contracts at issue here. *Cf., e.g.*, *Underdog Trucking, LLC v. Verizon Servs. Corp.*, No. 09-CV-8918 (DLC), 2010 WL 2900048, at *4–5 (S.D.N.Y. July 20, 2010) (applying New York law to find that the plaintiff, who signed the Agreement as president of plaintiff Underdog, was not a third-party beneficiary of the Agreement, where the Agreement "di[d] not evince any intent by the parties to benefit him"); *Shalam v. KPMG LLP*, 13 Misc. 3d 1205(A) (N.Y. Sup. Ct. 2006) ("[S]hareholders, even a sole shareholder, or one in a closely held corporation, have no standing to sue for injuries to the corporation itself." (collecting cases)), *aff'd*, 843 N.Y.S.2d 17 (N.Y. App. Div. 2007).

Because the only plaintiff with standing to bring a breach of contract claim is the Buyer, and the terms of the Agreement bar all claims except those enumerated in the indemnification clause, *see* Discussion III, *supra*, the only possible breach of contract claim is one brought by the Buyer alleging a breach of the Agreement's indemnification clause. I analyze this alleged breach below.

**B. The Buyer's Performance Under the Contract.**

Defendants assert that the Buyer cannot claim a breach of contract when "[t]he Complaint contains no non-conclusory allegation that [the Buyer] has performed" its obligations under the

---

[8] This clause excepts from the ban on third-party beneficiaries the contents of paragraph 9.6, which refers to "Contracting Parties" who possess rights under the Agreement and who are supposedly identified in the preamble to the Agreement. Agmt. ¶¶ 9.6, 15.10. The preamble in the Agreement before me does not contain the promised definition of "Contracting Parties," however. Without any indication to the contrary, I assume that "Contracting Parties" refers to the parties that signed the Agreement.

Agreement. MTD 11. Defendants do not explain why the Complaint is insufficiently pleaded in this regard, though, and their argument seems to rest largely on facts outside the scope of the Complaint. *See id.* at 11 n.13.

I find that, at this stage, plaintiffs have adequately pleaded that the Buyer performed under the Agreement. While plaintiffs do not expressly link the two in their Complaint, they not only assert that the Buyer fulfilled its obligations under the Agreement, the Security Agreement, and the Loan Agreement, Compl. ¶ 94, but also plead in support that the Buyer paid $3,859,589 for the Syntrol Assets, *id.* ¶ 41, pledged the Syntrol assets as collateral in the Security Agreement, *id.* ¶ 46, contracted in the Loan Agreement to obtain loans from the Seller for costs associated with acquiring and installing the Syntrol contracts, *id.* ¶¶ 48–49, and in total has paid defendants approximately $10,000,000 since the beginning of the transaction, *id.* ¶ 84. At this procedural stage, I take as true all facts alleged by plaintiffs unless expressly contradicted by the Agreement, the only document proffered and appropriately considered at this stage. *See* Discussion I, *supra*. The Agreement enumerates the Buyer's obligations; these include, as relevant, providing the Seller "the full Purchase Price (as evidenced as [the] Buyer's *execution and delivery* to [the] Seller of . . . the Notes)" and executing and delivering the Security Agreement and Loan Agreement. Agmt. ¶ 5.1 (emphasis added); *see also id.* ¶ 3.1. Defendants have not argued that the Buyer did not sufficiently plead performance of these specific conditions or of other unidentified demands of performance in the Agreement. I therefore find that plaintiffs have sufficiently pleaded that they performed their obligations under the Agreement.

### C. Lack of Indemnification and Implied Covenant of Good Faith and Fair Dealing.

Plaintiffs appear to plead that the Seller breached the indemnification clause in the Agreement by (1) not disclosing to the Buyer Syntrol's liabilities to Consolidated and Sunnova, (2) encouraging the

Buyer to settle with Consolidated and Sunnova, and (3) misrepresenting in the interpleader action that it had rights to Syntrol's assets, thus causing the Buyer to incur significant legal fees once the Buyer replaced it in the action.[9] *See* Compl. ¶¶ 77–91. Plaintiffs also allege that the Seller breached the covenant of good faith and fair dealing, which I interpret as a subset of their breach of contract claim.[10] Defendants respond that this claim is inadequately pleaded, *see* MTD 11–12, and that the indemnification clause covers only certain third-party claims enumerated in the Agreement, *id.* at 9 n.11.

The indemnification clause protects the Buyer against liability to any third party arising out of (1) "any breach of any of [the] Seller's representations, warranties, covenants or agreements" in the Agreement or (2) "claims made by junior secured creditors of Syntrol." Agmt. ¶ 9.3 (emphasis added). The clause specifically identifies these junior secured creditors to whom it applies and does not include either Consolidated or Sunnova. *Id.* On its face, the latter provision of the clause does not apply to the lawsuits against plaintiffs because neither Consolidated nor Sunnova is an enumerated junior creditor. As to the former provision, plaintiffs have not identified in the Complaint a single representation in the Agreement that the Seller breached. But the provision does however cover all covenants contained in the Agreement, which necessarily

---

[9] Plaintiffs allege further potentially supportive facts in their opposition, but I cannot consider them because they are not pleaded in the Complaint. *See* note 4, *supra*.

[10] Count I of the Complaint pleads that the Seller breached its contractual obligations under the Agreement. Agmt. ¶¶ 92–97. Count II pleads that the Seller also breached the covenant of good faith and fair dealing implicit in the contract. *Id.* ¶¶ 98–103. New York law, however, "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002). Rather, a breach of this covenant is "merely a breach of the underlying contract." *Id.* at 80 (citation omitted). The second claim is therefore dismissed and the implied covenant is incorporated into my breach of contract analysis. Because the Buyer is the only party with standing to bring a breach of contract claim under the Agreement, and the indemnification clause is the only basis for a contract claim exempt from the release, I analyze the alleged breach of good faith and fair dealing only in the context of the indemnification clause.

includes the implied covenant of good faith and fair dealing, *see, e.g.*, *Fishoff v. Coty Inc.*, 634 F.3d 647, 653 (2d Cir. 2011) ("Under New York law, a covenant of good faith and fair dealing is implied in all contracts."). The Buyer has pleaded that the Seller breached the covenant of good faith and fair dealing, *see* Compl. ¶¶ 98–103, albeit incorrectly as a separate claim. *See* note 10, *supra*. The sole possible basis for the Buyer's claim of breach based on the indemnification clause, therefore, is that the Seller breached this implied covenant and thus exposed the Buyer to liability.

The covenant of good faith and fair dealing is breached "when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement." *Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Com.*, 697 N.Y.S.2d 128, 130 (N.Y. App. Div. 1999) "Encompassed within the implied obligation of each promisor to exercise good faith are any promises which a reasonable person in the position of the promisee would be justified in understanding were included." *Singh v. City of N.Y.*, 139 N.Y.S.3d 307, 311 (N.Y. App. Div. 2020) (citation omitted), *leave to appeal granted*, 175 N.E.3d 1254 (N.Y. 2021). To state a claim for a breach of this implied covenant, plaintiffs must allege "facts which tend to show that the defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff." *Aventine*, 697 N.Y.S.2d at 130.

Plaintiffs have adequately pleaded a breach of this covenant, but only as to the Seller's assertion of rights in the interpleader action. For each of the Buyer's three claims of breach of the covenant of good faith and fair dealing, plaintiffs have to plead that (1) the Seller acted contrary to the covenant and (2) the Buyer's third-party liability arose out of that breach. Regarding plaintiffs' assertion that the covenant required the Seller to disclose to the Buyer Syntrol's liabilities to Consolidated and Sunnova, the Seller would have had such a duty only if the Seller had known, or had reason to know of, those liabilities prior to entering into the Agreement.

Consolidated and Sunnova both filed suit after the parties executed the Agreement, however, and plaintiffs assert no further basis to infer that the Seller knew of Syntrol's liabilities to Consolidated and Sunnova, and thus had reason to know these lawsuits were reasonably likely. Because plaintiffs fail to plead that the Seller knew of Syntrol's debts to Consolidated and Sunnova, they have accordingly failed to plead that the Seller violated any covenants under the Agreement by this asserted failure to disclose.[11] Plaintiffs' failure to allege that the Seller was under a duty to settle the lawsuits similarly dooms plaintiffs' second assertion that the Seller breached the covenant by encouraging the Buyer to settle with Consolidated and Sunnova.

The Buyer's third assertion, however, sufficiently pleads a breach of the implied covenant. As the interpleader action attempted to resolve multiple claims to Syntrol's assets, the Buyer, as the owner of the Syntrol assets, had a right to participate. The Seller, by representing that it had an entitlement to Syntrol's assets and not informing the Buyer of the suit, deprived the Buyer of the rights it had purchased. Finally, plaintiffs have sufficiently pleaded that the Seller's interference in this case caused the Buyer to incur liability by alleging that "[w]hen [the Buyer] settled with the other parties in the interpleader action, it owed significant legal fees caused by [the Seller's] misconduct in the proceeding." Compl. ¶ 90.

The motion to dismiss the breach of contract claim is therefore denied as to the alleged breach of the indemnification clause based on the Seller's claim of rights to Syntrol's assets in the interpleader action. Aside from this alleged breach, I grant defendants' motion to dismiss

---

[11] Plaintiffs plead that Consolidated alleged in its lawsuit that the Buyer had reason to know of Syntrol's debt to Consolidated. *Id.* ¶ 78. While I take this pleading as true at this stage, it does not provide a basis to infer that the *Seller* knew or should have known of this debt. First, plaintiffs' Complaint does not explain Consolidated's basis for asserting that the Buyer had "reason to know" about Syntrol's debt to Consolidated. Second, even if the Buyer was on notice about that debt, plaintiffs do not explain how that notice meant that the Seller also knew of the debt. Nor does the Complaint allege that the Buyer did know, or should have known, about Syntrol's liability to Sunnova. Plaintiffs instead conclusorily assert that the Seller "purposely failed to disclose" Syntrol's obligation to Sunnova. *Id.* ¶ 79.

plaintiffs' claims for breach of contract and breach of the covenant of good faith and fair dealing.

## V. The Fraud Claim Is Upheld Against the Seller and Swiss ALP Regarding Conduct Subsequent to the Signing of the Agreement.

Plaintiffs allege a fraud claim against all defendants based on representations that induced them to borrow more money from defendants after signing the Agreement and on defendants' manipulation of the Buyer's loan balance sheet. Compl. ¶¶ 63–65, 108. Defendants move to dismiss plaintiffs' fraud claim as insufficiently pleaded. MTD 14–16.[12]

New York law requires a fraud claim raised in a breach of contract case to be "sufficiently distinct" from the breach of contract claim. *Karsch v. Blink Health Ltd.*, 291 F. Supp. 3d 503, 507 (S.D.N.Y. 2018) (citation omitted); *see also Sforza v. Health Ins. Plan of Greater N.Y., Inc.*, 619 N.Y.S.2d 734, 736 (N.Y. App. Div. 1994) (dismissing "a claim to recover damages for fraud [that] [wa]s premised upon an alleged breach of contractual duties [where] the supporting allegations d[id] not concern representations which [we]re collateral or extraneous to the terms of the parties' agreement" (citation omitted)). A fraud claim that "arises from the same facts as an accompanying contract claim, seeks identical damages and does not allege a breach of any duty collateral to or independent of the parties' agreements is subject to dismissal as redundant of the contract claim." *Cronos Grp. Ltd. v. XComIP, LLC*, 64 N.Y.S.3d 180, 186 (N.Y. App. Div. 2017) (citation and modification omitted). To maintain a fraud claim separate from its contract claim, a plaintiff must do one of the following: (1) "demonstrate a legal duty separate from the duty to perform under the contract"; (2) "demonstrate a fraudulent misrepresentation collateral or extraneous to the contract"; or (3) "seek special damages that

---

[12] Plaintiffs also claim that the Seller fraudulently induced them to enter the Agreement, the Security Agreement, and the Loan Agreement. *Id.* ¶ 105. A fraudulent inducement to contract claim could be brought only by the Buyer, as the sole plaintiff party to the Agreement, however, and the Buyer has released all claims arising out of the Agreement except for claims within the limited parameters of the indemnification clause. *See* Discussion III–IV, *supra*. The fraudulent inducement to contract claim is therefore barred.

are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (citations omitted).

To state a claim for fraud, plaintiffs must allege: "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006). Fraud claims must be pleaded consistent with the particularity requirement of Fed. R. Civ. P. 9(b). Specifically, plaintiffs must identify the fraudulent statement or omission, who made it, when and where the statement or omission was made, and why the statement or omission was fraudulent. *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402–03 (2d Cir. 2015).

While plaintiffs do not specifically identify which pleaded conduct supports their fraud claim, certain pleaded acts could support a claim for fraud separate from the breach of contract claim. First, plaintiffs plead that they were fraudulently induced by defendants into entering additional financing agreements with them. Specifically, plaintiffs pleaded that Swiss ALP reassured plaintiffs that it would resolve plaintiffs' cash flow problems and that working together would allow plaintiffs' business to flourish. However, plaintiffs do not specify where, when, and by whom Swiss ALP's statements were made. Nor do plaintiffs explain why these statements by Swiss ALP's representative were fraudulent at the time they were made. Accordingly, plaintiff's fraudulent inducement allegations fail to meet the particularity standard of Rule 9(b).

Second, plaintiffs separately plead that defendants committed accounting fraud. Specifically, plaintiffs allege that the Seller attributed the Buyer's cash flow problems in part to vague accounting errors, credited the Buyer between $250,000 and $300,000 ostensibly to fix the errors, then increased the Buyer's loan balance by the same amount. These fraudulent accounting allegations are pleaded with sufficient particularity to survive a motion to dismiss. Plaintiffs

identified the allegedly fraudulent statements (that there were accounting errors and the Buyer would be reimbursed for these errors), who made the statement (the Seller and its representatives), where and when the statements were made (at the July 2019 meeting between plaintiffs and the Seller), and why the statements were fraudulent (the Buyer's loan balance was altered, vitiating the credit). Plaintiffs have also pleaded that they reasonably relied on these statements and suffered financial damage as a result. This meets the standard for an initial pleading.

As plaintiffs have made out a prima facie case for fraud based on the Seller's statements about "accounting errors," the motion to dismiss the fraud claim is denied.

## VI. Declaratory Judgment Requests.

Plaintiffs make two requests for declaratory judgment: (1) that plaintiffs bear no financial obligation to defendants and (2) that the Seller's UCC1 Financing Statement is void. Compl. ¶¶ 111–20.

The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In order to constitute an "actual controversy," the disagreement between the parties "must have taken [a] fixed and final shape so [I] can see what legal issues [I am] deciding, what effect [my] decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *Jenkins v. United States*, 386 F.3d 415, 417–18 (2d Cir. 2004) (quoting *Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 244 (1952)).

Courts in the Second Circuit consider multiple factors to determine whether to exercise judicial discretion to entertain a declaratory judgment request. I must consider (1) "whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved" and (2) "whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane*

*Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005). The Circuit has also specified discretionary factors I may consider: "(1) whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata'; (2) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (3) whether there is a better or more effective remedy." *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359–60 (2d Cir. 2003).

### A. Plaintiffs' financial obligations to defendants.

I deny the request for declaratory judgment that plaintiffs owe no financial obligations to defendants. Rendering a judgment on this question would not clarify any of the legal issues or reduce uncertainty in this controversy. Rather, I cannot resolve plaintiffs' request without resolving the entire dispute, which would be premature at this time. Therefore, Count IV of the Complaint is dismissed.

### B. UCC1 financing statement.

I also deny the request for declaratory judgment that the Seller's UCC1 Financing Statement against the Buyer is void. Plaintiffs have insufficiently pleaded an "actual controversy" regarding the UCC1 Financing Statement because the Statement is not mentioned anywhere in the Complaint. Count V of the Complaint is therefore dismissed.

## VII.   Conclusion

Defendants' motion to dismiss all of plaintiffs' claims is denied in part and granted in part. It is denied as to plaintiff the Buyer's claim for breach of contract based on the indemnification clause and plaintiffs HomeEnergy, EnergyInvest, and Mr. Enzendorfer's claim for fraud based on the Seller's statements about "accounting errors." It is granted as to all claims against Solid Income; plaintiffs HomeEnergy, EnergyInvest, and Mr. Enzendorfer's claim for breach of

contract; all plaintiffs' claim for breach of the covenant of good faith and fair dealing; the Buyer's fraud claim; and all plaintiffs' requests for declaratory judgment.

Plaintiffs request leave to amend. Opp'n 22 n.2. When claims are dismissed for failure to state a claim, it is customary to grant leave to replead unless doing so would be futile. *Goodrich v. Long Island Rail Rd. Co.*, 654 F.3d 190, 200 (2d Cir. 2011); *see also* Fed. R. Civ. P. 15(a)(2) (stating leave to amend should be freely given "when justice so requires"). Repleading would be futile where, *inter alia*, the problems with the complaint are substantive. *See Nasso v. Bio Reference Lab'ys, Inc.*, 892 F. Supp. 2d 439, 455 (E.D.N.Y. 2012) ("The problem with plaintiff's cause of action is substantive; better pleading will not cure it. Repleading would thus be futile." (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (modification markings omitted)). Here, three of plaintiffs' claims present problems not of pleading, but of substance. First, I have found the release clause to be valid and binding, and plaintiffs have given no indication that any repleading of facts could remedy this deficiency. This clause therefore bars all claims by the Buyer, except for the alleged breach of the indemnification clause based on the Seller's assertion of claims in the interpleader action; they may not be reasserted in an amended complaint. Second, it would not be possible for plaintiffs to amend their pleading so as to persuasively plead that plaintiffs HomeEnergy and EnergyInvest have standing to bring a breach of contract claim. Third, the plaintiffs cannot replead their request for declaratory judgment regarding their financial obligations to defendants in a way that changes the fact that this request raises issues inextricably intertwined with the thrust of the other claims. I accordingly dismiss with prejudice (1) Claims II through V as to the Buyer, (2) Claim I as to HomeEnergy and EnergyInvest, (3) the first request for declaratory judgment, Claim IV, as to all plaintiffs, and (4) all claims against Solid Income. The Buyer's allegation of breach of the indemnification clause in Claim I and all other plaintiffs' allegation of fraud based on the "accounting errors" statements remain. I dismiss the remainder of

26

Claims I, II, III, and V without prejudice and grant plaintiffs leave to replead them in an amended complaint in accordance with the above.

## MOTION TO STRIKE

The Seller and AEC 51 move to strike as inadequately pleaded all but the fifth of the Buyer's affirmative defenses to the 21-CV-1479 Complaint. MTD 24–28. The Buyer responds that by incorporating by reference the 21-CV-1337 Complaint into the affirmative defenses it adequately supported all proffered defenses. Opp'n 32–36.

### I.   Legal Standard

I may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). I have "discretion in deciding whether to grant motions to strike," though such motions are "generally disfavored and granted only if there is strong reason to do so." *Holland v. Chase Bank USA, N.A.*, No. 19-CV-233 (PAE), 2020 WL 4340726, at *3 (S.D.N.Y. July 28, 2020) (citations and quotation marks omitted). Indeed, they "should be denied unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation." *Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*, Nos. 16-CV-2767, 16-CV-2787 (GBD), 2016 WL 6906583, at *6 (S.D.N.Y. Nov. 21, 2016) (citation and quotation marks omitted); *see also Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 425 (S.D.N.Y. 2010).

To succeed on a motion to strike, the movants must demonstrate that (1) there is no question of fact that might allow the party proffering the affirmative defenses to succeed; (2) there is no question of law that might allow that party to succeed; and (3) the movants would be prejudiced by inclusion of the defense. *See GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 96 (2d Cir. 2019) (citation omitted). The Second Circuit has determined that "the plausibility standard of [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007),] applies to determining the sufficiency of

. . . the pleading of an affirmative defense." *Id.* at 98. The affirmative defenses must therefore be supported with "some factual allegations to make them plausible" and have a legally sufficient basis to preclude success on the claim in question. *Id.* at 98–99. Nevertheless, "applying the plausibility standard to any pleading is a 'context-specific' task," and "the relevant context will be shaped by the nature of the affirmative defense," including whether the nature of the affirmative defense means the necessary facts were readily available within the narrow window to respond to the complaint. *Id.* at 98 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "A factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of the litigation." *Id.*

Here, the incorporated 21-CV-1337 Complaint is the sole source of pleadings in support of the asserted affirmative defenses. *See* Answer 13–15. I therefore assume that, in the Buyer's view, all asserted affirmative defenses are supported by that Complaint. As the 21-CV-1337 Complaint was filed prior to the 21-CV-1479 Complaint and has not since been amended, there is no reason to make accommodations for a lack of notice or short turnaround time. The affirmative defenses will therefore be evaluated according to the *Twombly*/*Iqbal* pleading standard.[13]

## II.   I Grant the Motion to Strike the Sixth Through Tenth Affirmative Defenses.

I find that the Buyer's sixth, seventh, eighth, ninth, and tenth affirmative defenses are all inadequately pleaded, and therefore grant defendants' motion to strike them.

The Buyer requests that I stay consideration of the motion to strike the waiver defense asserted as part of the seventh affirmative defense, as well as the ninth and tenth affirmative defenses

---

[13] While I have dismissed the Buyer's claims against defendants in the lead case because of the release clause in the Agreement, that release does not prevent the Buyer from asserting affirmative defenses in this related action. I therefore review those same claims for sufficiency of pleading in support of the affirmative defenses.

pending discovery. Opp'n 35 n.3. This request ignores the requirement that parties cannot obtain discovery on an allegation unless that allegation first satisfies the notice pleading requirements of Fed. R. Civ. Pro. 8(b). Therefore, I must assess now whether those affirmative defenses have been sufficiently pleaded. For the stricken affirmative defenses, should any additional facts arise during discovery that support these assertions, the proper avenue by which the Buyer must proceed is detailed in Fed. R. Civ. P. 15(a). The request to stay consideration is thus denied.

### A. Failure to mitigate damages.

The motion to strike the sixth affirmative defense, failure to mitigate damages, is granted. The Buyer does not identify in the pleading of this affirmative defense which damages sustained by the Seller and AEC 51 were avoidable, and thus could have been mitigated. The Buyer cannot remedy this insufficiency of pleading by arguments contained in the opposition to the motion to strike.

### B. Laches, waiver, estoppel, ratification, acquiescence, and/or acceptance.

The motion to strike the seventh and eighth affirmative defenses—collectively asserting laches, waiver, estoppel, ratification, acquiescence, acceptance, and/or estoppel—is granted. The Buyer has not explained how these equitable defenses could apply in this case. Nothing in the 21-CV-1337 Complaint addresses this issue. Moreover, in opposing the motion to strike, the Buyer merely lists the standard for equitable estoppel without connecting that standard to any pleaded facts. *See* Opp'n 35–36. I accordingly find that these affirmative defenses have not been adequately pleaded and grant defendants' motion to strike them.

### C. Statute of frauds.

The motion to strike the ninth affirmative defense, violation of the statute of frauds, is granted. The Buyer has not identified any agreement that should have been, but was not, reduced to a writing.

### D. Failure to join necessary parties.

The motion to strike the tenth affirmative defense, failure to join necessary parties, is granted. The Buyer has not identified any party whose joinder is necessary, much less explained why any such party must be joined. This affirmative defense is therefore inadequately pleaded and I grant defendants' motion to strike it.

### III. The First Through Fifth and Eleventh Affirmative Defenses Remain.

As explained below, I find that the Buyer's first, second, third, and fourth affirmative defenses—unclean hands, fraud, failure of consideration, and breach of good faith and fair dealing, respectively—are adequately pleaded.

### A. Unclean hands.

The motion to strike the first affirmative defense, unclean hands, is denied. "The doctrine of unclean hands applies when the complaining party shows that the offending party is 'guilty of immoral, unconscionable conduct and even then only when the conduct relied on is directly related to the subject matter in litigation and the party seeking to invoke the doctrine was injured by such conduct.'" *Kopsidas v. Krokos*, 742 N.Y.S.2d 342, 344 (N.Y. App. Div. 2002) (quoting *Nat'l Distillers & Chem. Corp. v. Seyopp Corp.*, 17 N.Y.2d 12, 15 (N.Y. 1966)). As discussed above, plaintiffs have adequately pleaded in the 21-CV-1337 Complaint that defendants engaged in fraudulent conduct, that plaintiffs relied on their deceptive statements, and that plaintiffs were injured as a result. *See* Discussion V, *supra*; *see also Welch v. DiBlasi*, 737 N.Y.S.2d 716, 717 (N.Y. App. Div. 2001) (noting that unclean hands applies to those who "execute[] an agreement to perpetrate a fraud" (citation omitted)). Moreover, the allegedly fraudulent conduct is directly related to the subject matter of the litigation in 21-CV-1479, as that case concerns the same agreements and business relationships as those at issue in 21-CV-1337's fraud claim. Based on these allegations, the Buyer has asserted a viable unclean hands defense.

30

### B. Fraud

The motion to strike the second affirmative defense, fraud, is denied. Like fraud pleadings in a complaint, affirmative defenses alleging fraud must be pleaded with particularity as required by Rule 9(b). *Sesto v. Slaine*, 171 F. Supp. 3d 194, 205 (S.D.N.Y. 2016). I find that plaintiffs in 21-CV-1337 have adequately pleaded that defendants committed fraud by increasing the Buyer's loan balance sheet when purporting to give the Buyer a credit for accounting errors. *See* Discussion V, *supra*. The Buyer has therefore sufficiently substantiated this affirmative defense.

### C. Failure of consideration.

The motion to strike the third affirmative defense, failure of consideration, is denied. Plaintiffs have alleged that they contracted to purchase 489 contracts; these customer contracts are enumerated in Exhibit A of the Agreement, where they are specifically identified as "Customer Contracts." Once the contracts were tendered to them, however, plaintiffs discovered that at least 257 of the purported contracts were not contracts at all. Instead they were merely business leads or not supported by a sales record. Ultimately, plaintiffs received fewer than half the contracts they were promised. Under New York law, failure of consideration applies when a buyer has not received what it was promised under the contract. *See, e.g.*, *Walker v. Winks Furniture*, 640 N.Y.S.2d 428, 430 (N.Y. City Ct. 1996) ("Whether viewed as a want of consideration or a failure of consideration, it is clear that Walker failed to receive the furniture she had ordered by the delivery date promised."); *Pinto v. Pulidora*, 162 N.Y.S. 736, 737 (N.Y. App. Div. 1917) ("[W]here the note is given for the purchase price of articles actually sold which in the course of delivery are destroyed or in full consideration of an agreement to be performed by the other party, the failure of the other party or his loss of ability to perform has been held to be a failure of consideration which defeats the note." (collecting cases)). Plaintiffs have adequately pleaded that they did not receive what they bargained

for, and thus the Buyer has adequately pleaded the failure of consideration affirmative defense.

### D.  Violation of good faith and fair dealing

The motion to strike the fourth affirmative defense, violation of the implied covenant of good faith and fair dealing, is denied. Just as a claim based on a breach of good faith and fair dealing is redundant of a breach of contract claim, courts in this Circuit have found that an affirmative defense based on a breach of good faith and fair dealing is generally duplicative of the denial of a breach of contract allegation. *See, e.g.*, *Hudson Bay Master Fund*, 2016 WL 6906583, at *8; *Cohen v. Elephant Wireless, Inc.*, 03-CV-4058 (CBM), 2004 WL 1872421, at *11 (S.D.N.Y. Aug. 19, 2004). Courts in this Circuit, however, "generally will not strike even a seemingly redundant defense akin to a general denial in the absence of prejudice." *Kochan v. Kowalski*, 478 F. Supp. 3d 440, 452 (W.D.N.Y. 2020) (citation and quotation marks omitted). Allowing this defense to remain will cause no prejudice to defendants because it will not "expand the scope of discovery or otherwise increase the complexity of the . . . litigation." *Id.* at 453.

### E.  Reservation of additional defenses.

The motion to strike the eleventh affirmative defense, reserving the Buyer's right to assert "separate and additional defenses, counter claims or crossclaims that are supported by information and facts obtained through discovery and other means" and to amend its Answer, is denied. It is merely a reservation of its rights to assert additional defenses in the event new facts are discovered to support such defenses. I will accordingly not strike this affirmative defense. I do, however, note that "this determination does not excuse the otherwise applicable constraints of Rules 15 and 16 [of the Federal Rules of Civil Procedure] to any future attempt to amend the Answer." *Kochan*, 478 F. Supp. 3d at 455 (citation and quotation marks omitted).

## IV.  Conclusion

For the reasons set forth above I grant defendants' motion to strike the Buyer's sixth,

seventh, eighth, ninth, and tenth affirmative defenses.

## ORDERS

For the reasons stated above, it is hereby

ORDERED that all claims against defendant Solid Income are dismissed with prejudice.

ORDERED that the Buyer's claims, except for the alleged breach of the indemnification clause due to the Seller's assertion of rights in the interpleader action (Claim I), are dismissed with prejudice.

ORDERED that plaintiffs HomeEnergy and EnergyInvest's breach of contract claim (Claim I) is dismissed with prejudice.

ORDERED that plaintiffs' breach of good faith and fair dealing claim (Claim II) is dismissed with prejudice.

ORDERED that plaintiffs' first request for declaratory judgment (Claim IV) is dismissed with prejudice.

ORDERED that plaintiff Mr. Enzendorfer's breach of contract claim (Claim I) and all plaintiffs' second request for declaratory judgment (Claim V) are dismissed without prejudice as to repleading within fourteen days.

ORDERED that plaintiffs' sixth, seventh, eighth, ninth, and tenth affirmative defenses to the 21-CV-1479 complaint are stricken.

SO ORDERED.


_____/s/_____
Allyne R. Ross
United States District Judge


Dated:          February 28, 2022
                Brooklyn, New York

33